UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| LORETTA HALSEY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 1:18-cv-03062-DLP-RLY |
| | ) |
| WALMART, INC., | ) |
| | ) |
| Defendant. | ) |

**ORDER**

This matter comes before the Court on the Defendant's Motion for Summary Judgment, Dkt. [36]. For the reasons set forth below, the Court **GRANTS** Defendant's motion.

**I.   Background**

On August 25, 2016, Plaintiff Loretta Halsey ("Ms. Halsey") was shopping in a Wal-Mart store in Richmond, Indiana. (Pl. Compl., Dkt. 1-1 at 1.) Ms. Halsey had entered the store and turned right, with an intention to walk to the customer service counter. (Pl. Dep. 23:1-23, Dkt. 38-1 at 3.) As she was walking past an ice cooler on the way to the customer service counter, she slipped on a liquid on the floor and fell. (Pl. Dep. 23:1-19, Dkt. 38-1 at 3.) Ms. Halsey believed the liquid to be water, but does not know for certain. (Pl. Dep. 33:24-25; 34:1-8; 35:5-23, Dkt. 38-1 at 6-8.) Ms. Halsey did not know where the water came from, how long it had been on the floor, or whether any Wal-Mart employee knew about its existence. (Pl. Dep. 32:6-11; 35:5-11; 36:1-13; 47:1-17, Dkt. 38-1 at 5, 8-10.) A surveillance video

1

captured Ms. Halsey's fall. (Dkt. 52 at 5:15.) In the fifteen minutes preceding her fall, several Wal-Mart employees and numerous customers passed the area in front of the ice cooler where Ms. Halsey fell. (Id. at 5:00-5:15.) No Wal-Mart associate cleaned the area in the hour before Ms. Halsey fell. (Id. at 4:15-5:15.)

Ms. Halsey filed the present claim in Wayne County Circuit Court on August 24, 2018 alleging that she suffered damages as a result of Wal-Mart's negligence. The matter was removed to this Court on October 4, 2018 on the basis of diversity jurisdiction. 28 U.S.C. § 1332.

## II. Legal Standard

Summary judgment is appropriate when the record shows that there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of showing the absence of genuine issues of material fact. *Lewis v. Wilkie*, 909 F.3d 858, 866 (7th Cir. 2018). If the moving party carries its burden, the burden shifts to the non-moving party to present specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party," summary judgment should be granted. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

In ruling on a motion for summary judgment, the court reviews "the record in the light most favorable to the non-moving party and draw[s] all reasonable inferences in that party's favor." *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir.

2009) (citation omitted). "However, inferences that are supported by only speculation or conjecture will not defeat a summary judgment motion." *Dorsey v. Morgan Stanley,* 507 F.3d 624, 627 (7th Cir. 2007) (citation and quotation marks omitted). Additionally, "[a] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." *Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487, 490 (7th Cir. 2007) (citation omitted). "The opposing party cannot meet this burden with conclusory statements or speculation but only with appropriate citations to relevant admissible evidence." *Sink v. Knox County Hosp.*, 900 F. Supp. 1065, 1072 (S.D. Ind. 1995) (citations omitted).

### III. Discussion

The Defendant, Wal-Mart, Inc. ("Wal-Mart"), filed its Motion for Summary Judgment on September 19, 2019, arguing that there is no evidence that Wal-Mart breached any duty owed to Ms. Halsey. (Dkt. 37 at 1.) Specifically, Wal-Mart argues that it had no actual or constructive knowledge of the alleged liquid on which Ms. Halsey slipped and fell. (Id. at 3.) Ms. Halsey filed her response on November 19, 2019, and asserts that there is a genuine issue of material fact as to whether Wal-Mart had constructive notice of the hazard on the floor. (Dkt. 49 at 5.)

The Court's jurisdiction over this matter is based on diversity pursuant to 28 U.S.C. § 1332, therefore, substantive principles of state law apply to Ms. Halsey's claim. *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 527 (1996). Under

3

Indiana law, a negligence action contains three elements. *City of S. Bend v. Dollahan*, 918 N.E. 2d 343, 352 (Ind. Ct. App. 2009). To succeed on her negligence theory of premises liability under Indiana law, Ms. Halsey must establish that: (1) Wal-Mart had a duty to conform its conduct to a standard of care arising from its relationship with her, (2) Wal-Mart failed to conform its conduct to that standard of care, and (3) Ms. Halsey sustained an injury proximately caused by Wal-Mart's breach. *Id.*

"The status of a person who comes onto land is key in determining the duty a landowner owes to that person." *Austin v. Walgreen Co.,* 885 F.3d 1085, 1088 (7th Cir. 2018). "Under Indiana premises-liability law, a landowner owes a business invitee a duty to exercise reasonable care for their protection while they remained on the premises." *Waldon v. Wal-Mart Stores, Inc.*, Store No. 1655, 943 F.3d 818, 822 (7th Cir. 2019) (internal quotations and citations omitted). It is undisputed that Ms. Halsey was a business invitee of Wal-Mart and, therefore, Wal-Mart owed her a duty to exercise reasonable care for her protection. *Schulz v. Kroger Co.*, 963 N.E. 2d 1141, 1144 (Ind. Ct. App. 2012) (citing *Burrell v. Meads*, 569 N.E. 2d 637, 642 (Ind. 1991)). Wal-Mart would breach this duty only if it:

   a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees; and
   b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it; and,
   c) fails to exercise reasonable care to protect them against the danger.

4

*Burrell,* 569 N.E. 2d at 640 (quoting (Restatement (Second) of Torts § 343 (1965)). Each of these elements must be present for a landowner to be liable under a premises liability theory. *See Rogers v. Martin*, 63 N.E. 3d 316, 322 (Ind. 2016).

"Allowing the existence of a hazardous substance on the floor of a business can be a breach of the duty to exercise reasonable care." *Austin*, 885 F.3d at 1088. Before liability may be imposed on the landowner, it must have "actual or constructive knowledge of a condition on the premises that involves an unreasonable risk of harm to invitees." *Pfenning v. Lineman*, 947 N.E. 2d 392, 406 (Ind. 2011); *see also Schulz*, 963 N.E.2d at 1144 ("[B]efore liability may be imposed on the invitor, it must have actual or constructive knowledge of the danger."). Because Ms. Halsey does not argue that Wal-Mart had actual knowledge of the hazard, the only issue for the Court is whether Wal-Mart had constructive knowledge that the liquid was on the floor and created an unreasonable risk of harm to its invitees.

  a. *Knowledge of Hazardous Condition*

Constructive knowledge is defined as a "'condition [which] has existed for such a length of time and under such circumstances that it would have been discovered in time to have prevented injury if the storekeeper, his agents or employees had used ordinary care.'" *Schulz*, 963 N.E. 2d at 1144 (quoting *Wal-Mart Stores, Inc., v. Blaylock*, 591 N.E. 2d 624, 628 (Ind. Ct. App. 1992)). In *Schulz*, a customer slipped on a clear liquid in the defendant's store. A store employee stated in her affidavit that she had been in the area where the alleged fall occurred about

5

five to ten minutes before the alleged fall and during that time, she did not observe any foreign substance or potential hazard on the floor; the floor was clean and dry. *Id*. at 1144–45. Given that the floor was clean and dry no more than ten minutes before the customer's fall, the court held that the store lacked constructive knowledge of the hazardous condition. *Id*. at 1145.

Ms. Halsey concedes that she did not see the substance on the floor before she fell; that she does not know how long the substance was on the floor; and that she does not know whether Wal-Mart knew it was on the floor before she fell. (Pl. Dep. 32:6-11; 35:5-11; 36:1-13; 47:1-17, Dkt. 38-1 at 5, 8-10.) The record contains no designated evidence that demonstrates how long the liquid was on the floor or whether any Wal-Mart employee knew about or should have discovered the existence of said liquid on the floor. Put another way, the Plaintiff has not designated any evidence to show that the condition, clear liquid on the floor, existed for such a length of time and under such circumstances that it would have been discovered in time to prevent injury if Wal-Mart or its employees had used ordinary care.

"Where constructive knowledge is alleged, of critical importance is whether the substance that caused the accident was there a length of time so that in the exercise of ordinary care its presence should have been discovered." *Reid v. Kohl's Dept. Stores, Inc.,* 545 F.3d 479, 482 (7th Cir. 2008) (internal quotations omitted). "Absent any evidence demonstrating the length of time that the substance was on the floor, a plaintiff cannot establish constructive notice." *Id*. Ms. Halsey relies on mere speculation to claim that ice and water from the ice cooler pooled on the floor

and caused her to fall, a proposition that the Court will not accept when supported only by speculation or conjecture. *See Waldon v. Wal-Mart Stores Inc.*, No. 1:17-cv-3673, 2019 WL 699139 (S.D. Ind. Feb. 20, 2019), aff'd sub nom. *Waldon v. Wal-Mart Stores, Inc.*, 943 F.3d 818 (7th Cir. 2019) (Court declined to draw an inference as to how long a hazard had existed when only supported by speculation or conjecture). Thus, the record here contains no evidence that Wal-Mart had constructive knowledge of the allegedly dangerous condition.

      b. *Recurrent Condition*

Ms. Halsey also argues that Wal-Mart had constructive knowledge of "the wet conditions in front of the ice cooler because the wet spot was a recurrent condition which poses a potential danger to invitees." (Dkt. 49 at 8). The doctrine of recurring condition is limited to circumstances where prior knowledge "that the specific condition at issue, though transitory, is a part of a known and continuing or recurrent condition." *Jeffrey Whitlock v. Menard, Inc.*, No. 1:18-cv-1386-TWP-TAB, 2020 WL 59516 (S.D. Ind. Jan. 6, 2020) (citing *Hetzel v. Jewel Cos.*, 457 F.2d 527, 530 (7th Cir. 1972)).

She argues that her case is similar to *Hetzel*, 457 F.2d at 530 and *Jordan v. Meijer Stores Ltd. Partnership*, No: 1:10-cv-368-TWP-TAB, 2012 WL 4867422, at *1 (S.D. Ind. Oct. 12, 2012). In *Hetzel*, the plaintiff slipped and fell on an unknown liquid on the floor of the defendant's store immediately in front of the self-service meat counter. *Id.* Two employees of the defendant testified that the employees knew liquid appeared on the floor in front of the meat counter frequently, would watch

7

out for those occurrences, and would clean it up when they saw the liquid appear. *Id*. The court held that "a storekeeper who knows of the existence of a recurrent condition which poses a potential danger to invitees may not ignore that knowledge and fail reasonably to respond to the foreseeable danger posed by the likelihood of recurrence." *Id*. Under Indiana law, the court found, notice of a recurring dangerous condition that is left uncorrected is sufficient to justify a finding of liability against a defendant whose duty it was to protect against the danger. *Id*. at 531.

In *Jordan*, the plaintiff slipped on a green bean lying in the produce section of a Meijer store. 2012 WL 4867422, at *1. The produce clerk testified that her supervisor was generally aware that customers would drop green beans onto the floor. *Id*. She further testified that approximately ten minutes before the plaintiff's fall, she had cleaned up a large spill of green beans on the floor, and that she would clean up green beans on the floor every fifteen to twenty minutes because of the frequency that customers would drop green beans. *Id*. This Court found that the defendant had constructive knowledge of a recurrent condition insofar as the defendant was aware that green beans were consistently dropped on the floor in the area in which the plaintiff fell, and that the jury was entitled to determine whether cleaning up those spilled green beans every fifteen to twenty minutes constituted reasonable care. *Id*. at *4.

Ms. Halsey argues that a wet spot in front of the ice cooler inside of the Richmond Wal-Mart is a recurrent condition which poses a potential danger to invitees. (Dkt. 49 at 8.) She asserts that the wet spot in this case is much like the

liquid in *Hetzel* or the green beans in *Jordan*, in that "it is known that customers frequently load ice into their cart and have the potential to leave ice or water on the floor in front of the cooler." (Id.) Wal-Mart also places mats in front of the ice coolers because of the possibility of water getting on the floor. (Id., Yaryan Dep. 24:17-25.) Therefore, she argues, Wal-Mart had constructive knowledge of the dangerous condition caused by water or ice on the floor in front of the cooler because it was aware of the recurrent condition, which then imputed a duty to remedy the wet condition. (Dkt. 49 at 8.)

    The Court does not find either *Hetzel* or *Jordan* persuasive here. In both of those cases, the store employees had adequate notice of a recurrent condition, namely the water or the green beans on the floor. The employees had noticed a persistent problem and attempted to remedy it, and there was evidence in the record from the defendants' employees that they had noticed those problems. Here, however, even considering the evidence in the light most favorable to Ms. Halsey, there has been no designated evidence suggesting that ice or water on the floor in front of the ice cooler is a recurrent problem. In fact, Ms. Robin Yaryan, Assistant Manager at the Richmond Wal-Mart, testified that Wal-Mart employees do not expect water to drop from the ice cooler, but that a rubber mat is placed in front of the ice cooler to prevent a fall of possible water. (Yaryan Dep. 25:5-17, Dkt. 50-1 at 19.) Ms. Yaryan also testified that she was unaware of any other customer complaints about water in the general area in which Ms. Halsey fell either in the

year leading up to the incident or on the day of the incident. (Yaryan Dep. 45:11-18, Dkt. 57-1 at 3.)

Ms. Halsey also highlights Ms. Yaryan's testimony that Wal-Mart associates are trained to look for potential hazards around the store, including ice or water on the floor, and are supposed to engage in checks for potential hazards regularly throughout their shifts. (Dkt. 49 at 2-3; Yaryan Dep. 12-16.) This, however, does not constitute constructive knowledge. Even if Wal-Mart employees knew that hazards were possible, that does not mean that they knew a hazard had actually surfaced in the area in which Ms. Halsey fell. *See Austin v. Walgreen Co.,* 885 F.3d 1085, 1088-89 (7th Cir. 2018). Moreover, several Wal-Mart employees and numerous customers walked across the same stretch of floor on which Ms. Halsey fell and either did not detect or did not report a hazard on the floor. *Royce v. Wal-Mart Stores East, LP*, No. 1:17-cv-514-HAB, 2019 WL 2357861 (N.D. Ind. June 4, 2019) (employees walking past an area with a hazard, without walking directly over it or specifically looking for it, does not create an inference that the employees "should have, or could have, seen the puddle.")

In *Austin*, a Walgreen store manager admitted that "when there was snow outside, as there was on the day in question, customers could track snow into the store and create potentially hazardous situations." *Id*. The court determined that knowledge that those hazards could occur at any moment "does not automatically impute instantaneous knowledge of when those hazards come about." *Id*. at 1089. There are many potential hazards that could exist in a store like Wal-Mart. As

10

argued by Menard in *Austin*, the Seventh Circuit rejected application of the recurring hazard doctrine to knowledge of non-specific hazards. The Seventh Circuit explained that "[t]he law does not hold [a storeowner] strictly liable for a fall occurring before [it] even had a chance to remove the foreign substance from the floor." *Id*. at 1089.

Here, while there is evidence that Wal-Mart employees knew generally that ice or water could pool on the floor in various places of the store, there is no evidence showing that Wal-Mart had a chance to respond to the specific hazard in this case. Accordingly, Ms. Halsey cannot establish knowledge of a recurrent hazardous condition, which in turn renders her unable to establish that Wal-Mart had actual or constructive knowledge of the water on the floor and, thus, her claim fails.

## IV.   Conclusion

For the reasons stated above, the Defendant's Motion for Summary Judgment, Dkt. [36], is **GRANTED.** Final judgment in favor of Defendant will be entered accordingly.

So ORDERED.

Date: 1/17/2020

Doris L. Pryor
United States Magistrate Judge
Southern District of Indiana

Distribution:

All ECF-registered counsel of record via email